# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DOMINION LIQUID TECHNOLOGIES, LLC,      Case No. 1:11-cv-444
         Plaintiff,

                                        Litkovitz, M.J.

     vs.

GT BEVERAGE COMPANY, LLC, *et al.*,        **ORDER**
         Defendants.

This matter is before the Court on plaintiff Dominion Liquid Technologies, LLC's (Dominion) motion to exclude defendants' damages expert Daniel E. McMackin (Doc. 126), defendants GT Beverage Company, LLC and True Drink, Inc.'s (GT)[1] response in opposition (Doc. 131), and Dominion's reply memorandum (Doc. 132). Also before the Court is GT's motion to strike Dominion's reply memorandum for failure to comply with the Court's standing order (Doc. 133), Dominion's response in opposition (Doc. 134), and GT's reply memorandum (Doc. 135).

## I. Background[2]

Daniel E. McMackin is an owner and the president of McMackin Corporation, an engineering firm specializing in the manufacture and engineering of food and beverage production lines. (Doc. 131, Ex. B at 7-9, Deposition of Daniel E. McMackin) (McMackin Depo). Mr. McMackin received his bachelor's degree in business in economics from the University of New Hampshire and joined McMackin Corporation, a family-owned company, in 1982 following his service in the United States Army. (*Id*. at 7, 9-10). Since 1982, Mr.

---

[1] It is undisputed that defendant True Drinks, Inc. is the successor in interest of GT Beverage Company. For purposes of clarity, the Court will hereinafter refer to both GT and True Drinks as "GT."

[2] The detailed facts and procedural history of this case are set forth in this Court's March 14, 2014 Order on the parties' cross motions for summary judgment (Doc. 117) and will not be reiterated here.

McMackin has functioned as an on-site project manager and senior manager for McMackin Corporation, which entails the design and development of food and beverage manufacturing facilities, including the design of production and bottling lines for beverage companies. (*Id.* at 11-13).

Mr. McMackin was retained by GT to inspect and evaluate Line 3 at Dominion's bottling facility – the bottling line purchased and installed by Dominion pursuant to its agreement to fill purchase orders of GT's beverages. *See* Doc. 131, Ex. A, Mr. McMackin's Field Report and Opinion (McMackin Report). Mr. McMackin determined that the sanitary process of the front end of Line 3 – the production portion – has a "significant value" to Dominion because it enables Dominion to produce diverse products and adds significant flexibility to its production by adding tankage and blend area capacity to its other bottling lines. (*Id.* at 3). Mr. McMackin valued the components of Line 3 at $303,000.00 and opined that its liquidation value ranged from $250,000.00 to $300,000.00. (*Id.* at 4). Mr. McMackin further estimated that the cost to duplicate the line as it sits in Dominion's facility was $1,000,500.00. (*Id.*). Mr. McMackin calculated the potential production capacity of Dominion with an operational Line 3 at various production levels[3] and opined that the value of Line 3 was greatest to Dominion as a going concern, as opposed to its value to another bottling facility. (*Id.* at 4-5). Mr. McMackin concluded that the "In place Value Replacement Cost" of the front end of Line 3 was $1,000,500.00, and the "Going Concern Potential Value" was $1,500,000.00. (*Id.* at 5).

The valuation of the front end of Line 3 was premised, in part, on the fact that Dominion had been utilizing Line 3's front end and that it was observed as running equipment. (McMackin

---

[3]Assuming certain variables in line efficiency and production rates, Mr. McMackin calculated that Line 3 could potentially result in production values to Dominion of $1.2 million to $1.68 million, depending on the margin

2

Depo. at 41-43). In contrast, the packaging portion of Line 3 – the back end– was evaluated as

offline equipment. (*Id*. at 50). Mr. McMackin opined that the back end of Line 3 was worth

$400,000.00 or more based on comparable equipment values and, consequently, its "In place

Value Replacement Cost" was $400,000.00. (McMackin Report at 6). Mr. McMackin further

opined that if the back end were utilized to provide variety packages, it would be worth $250,000

to Dominion after a $50,000 to $100,000 reconfiguration investment. (*Id*.). Mr. McMackin

stated that it would be "unwise to liquidate the [back end] equipment since so little demand

exists for it. . . ." (*Id*.).

Dominion moves under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals,

Inc.*, 509 U.S. 579 (1993) to exclude Mr. McMackin's proposed testimony as irrelevant and

unreliable. Because GT's liability has been established,[4] Dominion maintains that only evidence

pertaining to its reliance damages is relevant and admissible at trial. Such evidence includes the

costs expended by Dominion in purchasing and installing Line 3 and any monetary benefit

realized by Dominion due to GT's repudiation.[5] Dominion contends that Mr. McMackin's

proposed testimony is not relevant because his going-concern valuation does not quantify the

offsetting benefit to Dominion by its use of Line 3 and it ignores the fact that Dominion does not

need Line 3 given its current production levels. Dominion also contends that Mr. McMackin

should be precluded from testifying at trial because his opinions are not based on accepted

---

per 12 pack case. *See* McMackin Report at 4-5.

[4]The Court has previously determined that GT breached the parties' contract and that it is liable for the reliance damages incurred by Dominion. *See* Doc. 117. The only issue presented for trial is the damages amount.

[5]The parties do not dispute that GT is entitled to offset from the damages amount any monetary benefit Dominion realized due to GT's failure to perform under the parties' contract pursuant to the offsetting benefits rule. The offsetting benefits rule provides that the non-breaching party is entitled to damages incurred in reliance of the breaching party's promise to perform, offset by the monetary benefit to the non-breaching party by the breach. *See Yurchak v. Jack Boiman Const. Co.*, 443 N.E.2d 526, 529 n.3 (Ohio Ct. App. 1981) (citing 5 Corbin, *Corbin on Contracts*, 573, Section 1107).

3

methodology and are therefore prohibited as *ipse dixit* opinions. (Doc. 126).

GT responds that Mr. McMackin's proposed testimony and the conclusions contained in his expert report are relevant because they contain concrete valuations of the front end and back end of Line 3, including his opinion that both retain the highest value in Dominion's use and possession. GT argues that Dominion's claim that it does not need Line 3 to meet current production demands is immaterial because Dominion has utilized the line and has therefore received some monetary benefit from it which must be offset from the damages owed by GT. GT asserts that Mr. McMackin's proposed testimony is relevant as it will assist the Court in assessing the benefit Dominion has realized from its use of Line 3's front end and in calculating the damages award. GT further asserts that Mr. McMackin's capacity-based ongoing-concern valuation is a logical method for measuring the value of the front end because, unlike the back end, it is currently utilized by Dominion to produce goods. Regarding the back end, GT maintains that Mr. McMackin's proposed testimony as to its potential value and cost of replacement is reliable as his conclusions were based on the undisputed facts and logical assumptions. GT asserts that Mr. McMackin's valuations are based on his specialized knowledge as a designer of similar bottling lines and therefore are not *ipse dixit* and admissible. (Doc. 131).

## II. Standard of Law

The Court has the discretion to rule on an evidentiary motion *in limine* pursuant "to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial." *Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 5050585, at *1 (S.D.

4

Ohio Nov. 20, 2008) (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (internal citations omitted)).

Courts are generally averse to excluding evidence *in limine* because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A party seeking the exclusion of evidence must demonstrate that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388; *cf. Luce*, 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp.2d at 846.

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court has a "gatekeeping role" to screen expert testimony and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589-97 (1993); *Newell Rubbermaid, Inc. v. The Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). "[T]he law grants the [court] broad latitude" in analyzing and

5

determining the reliability of proffered expert witness testimony. *Kumho*, 526 U.S. at 139, 142.
"The inquiry [under Rule 702] is a flexible one[,]" and its focus "must be solely on principles
and methodology, not on the conclusions [the expert] generate[s]." *Daubert*, 509 U.S. at 594-95.
Rule 702 applies not only to scientific testimony but also to other types of expert testimony
based on technical or other specialized knowledge. *See Kumho*, 526 U.S. at 148; *First Tenn.
Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 332 (6th Cir. 2001) (applying *Kumho* to witness
whose expertise arose from experience).

**III. Resolution**

    A. <u>Mr. McMackin is qualified to serve as an expert witness</u>.

    Mr. McMackin's specialized knowledge, experience, training, and education demonstrate
that he is qualified to provide opinion testimony as to the value of beverage production line
equipment generally and as to Line 3 specifically. Fed. R. Civ. P. 702. Mr. McMackin has a
business and economics degree and has worked in the field of beverage line production for over
30 years as a project manager and senior project manager. (McMackin Depo at 7-12). He is
currently the president of McMackin Corporation, a company specializing in the design and
manufacture of beverage production lines similar to Line 3. (*Id.*). McMackin Corporation
services its customers by designing production lines based on its clients' budgets and/or
production needs. (*Id.* at 17-19). Mr. McMackin has worked with international bottling
companies such as PepsiCo and Coca-Cola in determining, *inter alia*, the capacity of beverage
production lines. (*Id.* at 68-69, 85-86). He has proffered expert testimony for PepsiCo in a
Venezuelan court; he was retained as an expert witness in New York state litigation; and he
served as an expert in a binding arbitration in New Jersey. (*Id.* at 68-69, 89). Mr. McMackin's
education, experience, and specialized knowledge in the design and value of beverage production

6

lines establish that he has the requisite foundation to opine on the monetary value of Dominion's bottling Line 3. Fed. R. Evid. 702; *see also Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

      B. Mr. McMackin's proposed testimony is relevant.

      Mr. McMackin's opinions on Line 3's value, both as a functioning line installed in a going concern and as scrap equipment, are relevant to and will assist the Court in understanding the evidence related to Dominion's damages, including any monetary benefit realized by Dominion's use of the line which may be offset from the damages award. Fed. R. Civ. P. 702; *Daubert*, 509 U.S. at 591. Dominion asserts that Mr. McMackin's opinions are not relevant because the costs incurred by Dominion in purchasing and installing Line 3 are not disputed by GT and can be proven without relying on expert testimony. Dominion also asserts Mr. McMackin's opinions regarding the value of Line 3 to Dominion are irrelevant to the damages calculation because: (1) he did not address Dominion's need for Line 3, and (2) he did not quantify the monetary benefit to Dominion resulting from the use of Line 3. Put simply, Dominion maintains that its production levels do not require use of Line 3 and, consequently, it is of no value to Dominion. Even assuming that the use of Line 3 conferred some value to Dominion, Dominion contends that to be relevant to the calculation of damages, Mr. McMackin's opinion must provide a quantifiable monetary valuation of this benefit. Dominion cites to Mr. McMackin's deposition testimony to support its contention that his opinion is not relevant because he has not provided a "dollars and cents" valuation of the monetary benefit realized by Dominion's use of Line 3. *See* McMackin Depo, at 125-26.

      The Court acknowledges that GT must put forth evidence establishing with reasonable certainty the monetary value of Line 3 to Dominion if it seeks to reduce the amount of damages

owed to Dominion. *See Westfed Holdings, Inc. v. U.S.*, 407 F.3d 1352, 1370 (Fed. Cir. 2005) (the breaching party bears the burden of proving with reasonable certainty the offsetting benefit retained by the non-breaching party). Yet, the Court is not persuaded that Mr. McMackin's proposed testimony is not relevant to the damages issues in this case despite the fact that his report and deposition testimony do not provide specific dollar amounts of the benefit realized by Dominion's use of Line 3. The pertinent inquiry in determining the relevance of Mr. McMackin's proposed testimony is not whether he has put forth precise damages calculations but whether his opinions will assist the Court in understanding the evidence or determining a fact at issue. *See* Fed. R. Civ. P. 702(b). Mr. McMackin's proposed testimony and valuations of Line 3 both as a running entity and as liquidated equipment will help the Court understand the evidence to be considered in determining the damages award. While the specific calculations provided by Mr. McMackin regarding the value of Line 3 to Dominion may not provide an exact calculation of the offsetting benefit, his specialized knowledge and testimony regarding the costs and values of bottling production line equipment is certainly relevant to the damages issues presented in this matter.

      C. <u>Mr. McMackin's opinions are based on sufficient facts and reliable methologies</u>.

Dominion argues that Mr. McMackin's proposed testimony contains inadmissible *ipse dixit* opinions. In support, Dominion cites to Mr. McMackin's deposition testimony that someone else in the food and beverage surplus equipment industry could give an appraisal of the value of Line 3 to Dominion that is entirely different from his own. *See* McMackin Depo. at 64. Dominion also contends that Mr. McMackin's reliance on his own knowledge base in assessing the value of Line 3's front end establishes that his opinions are not based on an accepted methodology such that they are *ipse dixit* and, consequently, inadmissible.

8

An *ipse dixit* opinion, otherwise known as a "because I said so" opinion, is "a bare assertion resting on the authority of an individual." *Black's Law Dictionary* 828 (6th ed. 1990). In determining the admissibility of an expert's opinion, courts are not required to admit evidence "which is connected to the data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The court should not focus on the expert's conclusions but on the principles and methodology employed and on whether "the factual underpinnings of the expert's opinions [are] sound. . . ." *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

The Court finds that Mr. McMackin's opinions are not inadmissible *ipse dixit* as they are based on more than his own "say so." Mr. McMackin's report reflects that his opinions are based on, *inter alia*, his review of various discovery produced by Dominion and his personal inspection and evaluation of Line 3 and Dominion's production facility. *See* McMackin Report at 1. Further, Mr. McMackin testified that in forming his opinion he reviewed documents, including documentation of the costs incurred by Dominion in purchasing and installing Line 3, and the deposition of Dominion's president; met with Dominion's president; inspected and observed the Line 3 equipment; and reviewed proposals from the equipment manufacturer. *See* McMackin Depo. at 35-39. In addition, Mr. McMackin relied on his 30 years of experience in the beverage production equipment field in evaluating the Line 3 equipment. *Id*. at 26. Mr. McMackin's findings are based on his personal inspection of Line 3 and his decades of professional experience in the field of designing and valuing beverage manufacturing equipment. His opinion is supported by a reliable foundation such that it is not properly characterized as inadmissible *ipse dixit*. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir.

2008) (internal citations omitted) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."). *Cf. Antioch Co. Litig. Trust v. Morgan*, No. 3:10-cv-156, 2014 WL 1365949, at \*3-4 (S.D. Ohio Apr. 7, 2014) (excluding expert's opinions and testimony on damages where expert did not perform his own valuation and his opinions were based on his review of unreliable hearsay evidence).

To the extent Dominion asserts Mr. McMackin's proposed testimony is inadmissible *ipse dixit* because he testified that another appraiser could come to entirely different conclusions, these arguments are unpersuasive because they "fundamentally confuse[] the *credibility and accuracy* of [Mr. McMackin's] opinion with its *reliability*." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (emphasis in original). *See also Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 182 (6th Cir. 2009) (weaknesses in an expert's methodology "affect the weight that his opinion is given at trial, but not its threshold admissibility."); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000) ("[M]ere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.") (quoting *United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir. 1993) (internal citations omitted)). "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note (2000 amend.). The appropriate means of challenging "shaky but admissible evidence" is not through exclusion but "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. . . ." *Daubert*, 509 U.S. at 596. The Court finds that Dominion's reliability and methodology challenges to Mr. McMackin's proposed testimony go to the weight of his testimony and not its admissibility. Dominion may challenge Mr. McMackin's opinions at trial through vigorous cross-examination and the

presentation of contrary evidence.

For the above reasons, Dominion's motion to exclude the testimony of Mr. McMackin (Doc. 126) is **DENIED**.

GT's motion to strike (Doc. 133) is **DENIED**. GT moves to strike Dominion's reply brief (Doc. 132) because it was not filed in accordance with the undersigned's Standing Order on Civil Procedures (the Standing Order). Section II, Part Q of the Standing Order prohibits the filing of reply briefs to motions *in limine* raising a *Daubert* challenge absent a Court order. *See* § II.Q of the Standard Order. Though Dominion filed its reply brief without first seeking leave of Court in contravention of the Standing Order, the reply memorandum was considered in the interest of determining this matter on the merits and not on a procedural technicality. *See Cooper v. American Emp. Ins. Co.*, 296 F.2d 303, 306 (6th Cir. 1961). *See also United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983). Further, given the above ruling in favor of GT on the motion *in limine*, the Court's consideration of this reply brief does not prejudice GT.

  **IT IS SO ORDERED.**

Date:_ 6/26/14

Karen L. Litkovitz
United States Magistrate Judge

11